RICHARD SLES, Respondent, v HEIDELBERG EASTERN, INC., Appellant. —In a negligence action to recover damages for personal injuries, defendant appeals from a judgment of the Supreme Court, Westchester County, entered January 18, 1979, which is in favor of the plaintiff in the principal sum of $404,502.50, upon a jury verdict. Judgment affirmed, with costs. In 1971 Rand McNally & Company, plaintiff's employer, installed a Polar Model 80 El Guillotine paper cutter at its Ossining plant. Some of the maintenance work on the paper cutter was done by Rand McNally's own employee, Alberto H. Rabe, but at times defendant was called to service it. In the summer of 1973 plaintiff was assigned to operate the paper cutter. The evidence shows that at the end of October, 1973 the machine malfunctioned. Plaintiff, *inter alia,* found that the cutting blade descended even though the activating buttons had not been pushed. Rabe examined the machine, but could not find the cause of the malfunction. Therefore, he called defendant's office and was told to make sure that the machine was not used until men could be sent to check and thoroughly service it. Accordingly, the machine was taken out of service. At approximately 9:30 A.M. on November 1, 1973 defendant's servicemen arrived.* Rabe told them

---

* Actually, only one (Kuhlman) of the two servicemen was defendant's employee. The other (Walters) was a representative of the manufacturer of the paper cutter, who was sent to train Kuhlman. Kuhlman had been repairing the type of paper

that the cutting blade operated without the buttons. They worked on the machine until noon, at which time they announced that they did not find anything wrong with the machine and left the premises. Plaintiff, however, reported that he still was not happy with the machine's operation. Since the servicemen were still in the plant parking lot, the plant manager went after them and asked them to return. They did so and worked on the machine further until 2:30 P.M. They requested plaintiff to operate the machine as he normally would, which he did. They also told plaintiff that the machine was safe to use. After watching plaintiff operate the machine for 20 minutes, the servicemen left. Twenty minutes later, while plaintiff was tapping his work in order to even it up before cutting (this practice is known as "jogging"), the blade descended on his wrist area, even though he had not pushed the activating buttons. Plaintiff sustained severe injuries. Investigations conducted after the tragic incident showed that a metal washer was lying free in the activating button mechanism. Plaintiff's expert was of the view that when plaintiff "jogged" the materials he was going to cut, the washer caused a short circuit and the malfunction of the cutting blade. The jury, charged separately on the issues of liability and damages, found that the defendant was liable for the injuries sustained by plaintiff. Defendant contends that plaintiff failed to make out a prima facie case. We disagree. Defendant undertook to repair the paper cutter on November 1, 1973, and was informed that the blade was activating although the buttons had not been pushed. Not only did defendant fail to repair that which it had undertaken to repair, but there is evidence that it informed plaintiff that the paper cutter (an obviously dangerous instrumentality) was safe to use. That injury could result from improper repair of the paper cutter was certainly to be expected. Defendant was under a duty to repair that which it had undertaken to repair and breach of that duty gives rise to liability (cf. *Pulka v Edelman,* 40 NY2d 781). There was sufficient evidence for a jury to find that the defendant did not exercise reasonable care to discover and repair the paper cutter's malfunction (cf. *Condomanolis v Boiler Repair Maintenance Co.,* 44 AD2d 366; *Wroblewski v Otis Elevator Co.,* 20 AD2d 732). Regarding the charge, we find that the errors pointed to by defendant do not warrant reversal. The charge, examined in its entirety, fairly presented the issues in the case. Margett, J. P., Martuscello, O'Connor and Weinstein, JJ., concur.

cutter involved here for only about a month before being sent on November 1, 1973 to Rand McNally to repair the subject paper cutter.